

# TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | | |
|---|---|---|
| Katerina Engstrom, | ) | Docket No.: 2018-01-0404 |
| **Employee,** | ) | |
| v. | ) | |
| Chattanooga Billiards Club, | ) | State File No.: 25193-2018 |
| **Employer,** | ) | |
| And | ) | |
| Eastern Alliance Insurance Group, | ) | Judge Thomas Wyatt |
| **Carrier,** | ) | |
| and | ) | |
| Abigail Hudgens, Administrator of the | ) | |
| Bureau of Workers' Compensation | ) | |
| Subsequent Injury and Vocational | ) | |
| Recovery Fund. | ) | |

**FILED**
Jan 28, 2019
11:36 AM(ET)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS

## EXPEDITED HEARING ORDER (DECISION ON THE RECORD)

This matter came before the Court on January 23, 2019, upon Katerina Engstrom's Request for Expedited Hearing seeking medical benefits for bilateral knee and psychological injuries.[1] Chattanooga Billiards Club (CBC) defended on the ground that Ms. Engstrom failed to establish that her alleged injuries arose primarily out of and in the course and scope of employment. For the reasons below, the Court holds that Ms. Engstrom will likely prevail in a hearing on the merits in her claim for medical benefits for her bilateral knee injuries but will not likely do so as to psychiatric care.

### History of Claim

Ms. Engstrom, a manager of CBC's bar and restaurant, alleged she slipped on a wet floor and fell onto both knees in April 2018. Co-worker Thomas Braxton stated that he observed Ms. Engstrom fall backward onto her elbow without striking her knees on anything, and that she held her elbow after the fall.

---

[1] Ms. Engstrom asked for a decision on the record, to which no one objected.

1

CBC accepted Ms. Engstrom's injury as compensable and authorized treatment at a walk-in clinic. The physician at the walk-in clinic referred her to an orthopedist in May, when she selected Dr. Michael Tew from a panel.

Ms. Engstrom told Dr. Tew that she underwent arthroscopic surgeries of both knees in 1999, but she related her current pain to "a slip and fall at work May '18 landing on both knees."[2] After obtaining MRIs, Dr. Tew diagnosed fractures of the upper end of her right tibia, a "spontaneous disruption of [the] anterior cruciate ligament of [the] right knee," and an "arthritic bone bruise [in the left] patella."

On June 27, Dr. Tew checked "YES" to the following question from Ms. Engstrom's counsel: "As per the above-cited 'greater than 50%' standard, did Ms. Engstrom's April 5, 2018 fall at work onto her bilateral extremities aggravate, exacerbate, or advance her pre-existing lower extremity condition and the need for treatment?" Dr. Tew performed authorized knee surgeries in July and November.

On July 11, Dr. Tew recorded that Ms. Engstrom "is getting depressed and has been placed on Prozac[.]" He made a "psychiatry referral for exacerbation of psych issues since her knee injury," since he could not treat this condition. He wrote "she wants to see a different psychiatrist from the VA doctor."

CBC initially filed a Notice of Denial of the alleged psychiatric injury, claiming that it did not arise primarily out of and in the course and scope of employment. In July and October, CBC provided different panels of psychiatrists that Ms. Engstrom rejected due to the fact that some of the listed providers were unwilling to accept workers' compensation patients and others practiced outside her community.

Ms. Engstrom tired of the delay in obtaining a psychiatry panel and sought care on her own. In late November, Dr. M. Aslam Sandvi agreed to accept her as a patient. Ms. Engstrom saw him on December 10 and paid for the treatment herself.

Dr. Sandvi noted that Ms. Engstrom expressed feelings of hopelessness and helplessness, high levels of anxiety, and periodic panic attacks. Ms. Engstrom told him about post-traumatic stress disorder, with periodic flashbacks and nightmares, from the military assault for which she began receiving treatment through the Veterans Administration in June 2018. He also noted Ms. Engstrom's reported preoccupation with chronic pain in her knees and workers' compensation problems. He further recorded that she verbalized anger and frustration about mistreatment by her employer and her

---

[2] Ms. Engstrom's Veterans Administration records indicated she underwent arthroscopic surgeries on her right knee in 1999 and 2013, and on her left knee in 2005 and 2013. Ms. Engstrom testified that she had two right-knee surgeries and one left-knee surgery before her injury at CBC.

difficulty in obtaining psychiatric treatment. Ms. Engstrom also told Dr. Sandvi that she did not require psychiatric medication before her fall.[3]

Dr. Sandvi diagnosed recurrent severe major depression and generalized severe anxiety, panic and severe post-traumatic stress disorders. He stated the following on causation and treatment:

> It is more likely than not (i.e. greater than 50%) that Ms. Engstrom's work related accident on April 5, 2018 exacerbated her pre-existing psychiatric condition, necessitating additional mental health treatment under worker's compensation[.] She is receiving treatment for post-traumatic stress disorder at the VA outpatient clinic. She will need psychiatric treatment for her severe depression and anxiety disorder.

Dr. Sandvi prescribed medication and counseling to treat the work-related aspects of Ms. Engstrom's psychiatric condition.

CBC introduced Ms. Engstrom's records from the VA, which indicated that she sought knee treatment beginning April 12, 2016, when she complained of her knees being painful, popping and giving way. The right knee was worse than the left. X-ray findings included minimal to mild osteophytosis at the medial margin of the right tibial plateau and minimal tricompartmental osteophytosis on the left.

In July 2016, Ms. Engstrom reported her right-knee pain made it difficult to walk. An x-ray indicated no bony deformity, and an MRI showed degenerative changes related to previous meniscal surgeries and a subchondral cyst in the medial tibial platform. Ms. Engstrom underwent three right-knee injections. On January 18, 2018, the VA note indicated she was considering right-knee-replacement surgery. A later note stated she underwent an MRI after she fell at CBC. It revealed a moderate bone contusion and nondisplaced trabecular fractures in the upper part of her right tibia.

As to psychiatric care, the VA records documented that Ms. Engstrom first sought treatment on June 4, 2018, for daily panic attacks and anxiety related to her recent attempt to process a sexual assault she suffered in the 1980s while in the military. The VA did not record that Ms. Engstrom related her psychiatric symptoms at that time to knee pain. On June 18, Ms. Engstrom reported that she suffered depression and anxiety for several years because of the assault and twice considered suicide. VA providers began her on a course of psychotropic medications including Trazadone.

On July 24, a VA provider noted that Ms. Engstrom complained because the agency denied her disability benefits for the assault, writing that she said: "[w]hat upsets

---

[3] The submitted VA records corroborate this statement.

3

me is that a person that sits at a desk . . . decided to tell me that there is nothing wrong with me or if there is . . . it did not start with my assault. My whole life got messed up from that experience." The only mention in this note of Ms. Engstrom's work injury related to her intent to return to work after surgery.

A VA provider noted on August 17 that Ms. Engstrom was concerned that problems with her left knee would derail her plan to return to work. She stated that "waiting is very difficult" and expressed anger that the workers' compensation carrier only authorized eight physical therapy sessions. This complaint was in addition to continuing complaints of depression and anxiety related to her assault. A VA note dated September 11 documented that Ms. Engstrom reported "anger, frustration and overwhelming sadness" because her boss treated her badly upon learning that she was ready to come back to work.

## Findings of Fact and Conclusions of Law

### *Bilateral Knee Injuries*

At an expedited hearing, Ms. Engstrom must provide sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). CBC contended that Ms. Engstrom has not met that burden as to the cause of her knee claim because of pre-existing conditions and contradictory testimony as to whether she struck her knees when she fell.

Regarding the contradictory testimony, CBC relied solely on the declaration of Mr. Braxton that he observed Ms. Engstrom fall without striking her knees. In her recorded statement, she stated that she struck her knees when she fell, and she repeated the same history to Dr. Tew. The Court accepts Ms. Engstrom's testimony regarding the mechanism of her fall because she gave consistent accounts in her recorded statement and to Dr. Tew.

On causation, Dr. Tew is the only physician who gave a specific opinion, and he related her bilateral knee injuries to her fall at CBC. As the treating physician, his opinion is entitled to a presumption of correctness. Tenn. Code Ann. § 50-6-012(14)(E) (2018). The Court notes that the post-injury MRI of Ms. Engstrom's right knee revealed fractures not present in pre-injury MRIs. The VA records did not rebut Dr. Tew's opinion that the fall at work primarily aggravated, exacerbated or advanced her bilateral knee conditions. Thus, the Court holds that Ms. Engstrom will likely prevail at trial in establishing that her bilateral knee injuries arose primarily out of and in the course and scope of employment.

4

*Psychological Injury*

Tennessee Code Annotated section 50-6-102(17) defines a compensable mental injury as "a loss of mental faculties or a mental or behavioral disorder, arising primarily out of a compensable physical injury[.]" In view of this definition and the evidence in the record, the Court holds Ms. Engstrom will likely not prevail at trial in establishing that her need for psychiatric care arose primarily out of her compensable physical injury.

The record of psychiatric treatment she underwent through the VA—almost all of which she related to her sexual assault—dilutes the weight of Dr. Sandvi's opinion that Ms. Engstrom's fall primarily accounts for her current need for psychiatric care. Dr. Sandvi's report set forth that Ms. Engstrom's psychiatric complaints relate in part to *chronic knee pain*, much of which pre-dated her work injury, given that the VA physicians discussed knee replacement with her before she fell at CBC. His report also indicated Ms. Engstrom's psychiatric symptoms relate in part to her boss's mistreatment of her when she attempted to return to work and to delays and uncertainties in her workers' compensation claim.

Under the definition on "mental injury" contained in section 50-6-102(17), an employee cannot recover benefits for a "psychological or psychiatric response due to the loss of employment or employment opportunities." When Dr. Sandvi's discussion of non-work-related factors contributing to Ms. Engstrom's mental condition is coupled with the severe psychiatric symptoms she endured due to her sexual assault, the Court cannot say that she will likely prevail in establishing entitlement to psychiatric care under workers' compensation.[4]

**IT IS, THEREFORE, ORDERED** as follows:

1. CBC shall continue to authorize and pay for reasonable and necessary treatment of Ms. Engstrom's bilateral knee injuries under Dr. Tew's care.

2. Ms. Engstrom's psychological injury claim is denied at this time.

3. This matter is set for a Status Hearing on **April 16, 2019, at 2:00 p.m. Eastern Time.** You must call (615) 741-3061 or toll-free at (855) 747-1721 to participate in the Status Hearing. Failure to call may result in a determination of the issues without your further participation.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days**

---

[4] Due to this conclusion, the Court need not address issues raised by Ms. Engstrom related to CBC's provision of psychiatric-treatment panels.

from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED January 28, 2019.**

_____

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:

1. Affidavit of Katerina Engstrom
2. Form C42 Choice of Physicians form selecting Dr. Tew
3. Form C42 Choice of Physicians form listing psychiatrists (unsigned)
4. Form C42 Choice of Physicians form listing additional psychiatrists (unsigned)
5. Form C27-Notice of Controversy
6. Records of Fast Access Healthcare
7. Records of Dr. Michael Tew
8. Dr. Tew's responses to causation questionnaire submitted by Ms. Engstrom
9. Receipt from Dr. M. Aslam Sandvi
10. CBC's letter to Dr. Tew seeking responses regarding the causation of Ms. Engstrom's psychiatric condition (not responded to)
11. Employee's discovery responses
12. Declaration of Thomas Braxton
13. Transcript of recorded statement of Ms. Engstrom
14. Records of Veterans Administration treatment
15. Records of Dr. M. Aslam Sandvi

Technical record:

1. Petition for Benefit Determination
2. Order and Authorization for Medical Records
3. Protective Order
4. Motion to Join Additional Party
5. Response to Motion for Joinder
6. Order of Joinder and Referral to Mediation
7. Dispute Certification Notice
8. Employee's Additional Disputed Issues
9. Employee's Objection to Dispute Certification Notice
10. Request for Expedited Hearing (On-the-Record Determination)
11. Employee's Witness List
12. Employee's Brief
13. Docketing Notice for On-the-Record Determination
14. Fund Position Statement
15. Notice of Filing of Dr. Sandvi's Records
16. Employer's Expedited Hearing Brief
17. Employer's Email Response to Question by the Court
18. Employee's Supplemental Brief
19. Employer's Exhibit List
20. Notice of Objection to VA Subpoena

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on January 28, 2019.

| Name | Certified Mail | Via Email | Email Address |
|---|---|---|---|
| Jennifer Arnold<br>Employee Attorney | | X | jarnold@arnold-lawyers.com |
| Alex Morrison<br>Chris Rowe<br>Employer Attorney | | X | abmorrison@mijs.com<br>cgrowe@mijs.com |
| Ronald McNutt<br>Subsequent Injury Fund | | X | Ronald.mcnutt@tn.gov |

w/permission P

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

8



Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

_____

**Employee**

v.

_____

**Employer**

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

Judge_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## **Appellee(s)**

**Appellee (Opposing Party):** _____ At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*** Attach an additional sheet for each additional Appellee ***

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the _____ day of _____, 20 ___

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation
220 French Landing Drive, I-B
Nashville, TN 37243-1002
800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____   2. Address: _____

3. Telephone Number: _____   4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month        Medical/Dental  $ _____ per month

    Groceries         $ _____ per month        Telephone      $ _____ per month

    Electricity       $ _____ per month        School Supplies $ _____ per month

    Water           $ _____ per month        Clothing        $ _____ per month

    Gas             $ _____ per month        Child Care    $ _____ per month

    Transportation  $ _____ per month        Child Support  $ _____ per month

    Car             $_____ per month

    Other           $ _____ per month (describe: _____ )

10. Assets:

    Automobile          $ _____        (FMV) _____

    Checking/Savings Acct. $ _____

    House              $ _____        (FMV) _____

    Other              $ _____        Describe:_____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____ , 20_____ .

_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                      RDA 11082